# Exhibit A

Case Number: CACE-20-020132 Division: 25

Filing # 117492838 E-Filed 12/02/2020 09:18:19 AM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN & FOR BROWARD
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE No.

WON VISION, INC.,

      Plaintiff,

v.

RAMADA WORLDWIDE, INC. d/b/a
WYNDHAM HOTELS,

      Defendant.

_____/

THE STATE OF FLORIDA:

**SUMMONS**

INITIALS_____ ID#_____
DATE_____ TIME_____

To Each Sheriff of Said State:

    YOU ARE HEREBY COMMANDED to serve this Summons, a copy of the
Complaint in this action on Defendant RAMADA WORLDWIDE, INC. d/b/a
**WYNDHAM HOTELS, BY SERVING, PURSUANT TO F.S. §48.091:**

      Registered Agent:    CORPORATE CREATIONS NETWORK, INC.
                          801 US Highway 1
                          North Palm Beach, FL 33408

    If service cannot be made on the Registered Agent because of
failure to comply with F.S. § 48.091, service of process
shall be permitted on any employee at the corporation's place
of business.

    **OR BY SERVING, ONE OF THE FOLLOWING IN THE ORDER OR PRIORITY
AS LISTED BELOW, PURSUANT TO F.S. §48.081:**

    1.  The president or vice president, or other head of the
corporation; and/or in his or her absence;

    2.  The cashier, treasurer, secretary or general manager;
and in the absence of all of the above;

1

3.    Any director; and in the absence of all of the above; or

4.    Any officer or business agent residing in the state.

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, whose address is:

MG Legal Group, P.A.
Counsel for Plaintiff
3126 Center St.
Miami, Florida 33133
Tel No.: (305) 448-9557
Fax No.: (305) 448-9559
*ljm@ljmpalaw.com*
*scheduling_ljmpa@comcast.net*

Attention:   LAWRENCE J. McGUINNESS, ESQ.

within 20 days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.   If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON _____          DEC 03 2020

Clerk of the Court

By: _____
    as Deputy

**BRENDA D. FORMAN**

2

.       .

                                    IN THE CIRCUIT COURT OF THE 17TH
                                    JUDICIAL CIRCUIT IN & FOR BROWARD
                                    COUNTY, FLORIDA

                                    GENERAL JURISDICTION DIVISION

                                    CASE No. CACE-20-020132 Division 25

WON VISION, INC.,

     Plaintiff,

v.

RAMADA WORLDWIDE, INC. d/b/a
WYNDHAM HOTELS,

     Defendant.
_____/

## AMERICAN WITH DISABILITIES ACT CLASS ACTION COMPLAINT

     COMES NOW Plaintiff, WON VISION, INC. ("Won Vision"), a
Florida Not-For-Profit Corporation, by and through the
undersigned counsel, hereby files this Complaint against
Defendant, RAMADA WORLDWIDE, INC. d/b/a WYNDHAM HOTELS("Ramada"
or "Defendant"), a Foreign For Profit Corporation, for
injunctive relief, attorney's fees and costs (including, but not
limited to, court costs and expert fees) pursuant to Title III
of the Americans with Disabilities Act of 1990, as amended, 42
U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as
follows:

### INTRODUCTORY STATEMENT

     1.   Won Vision brings this action to stop the
marginalization of blind, vision impaired, and low vision
patrons of Ramada's website (which is an extension of its
business) throughout the United States of America, where the
groundbreaking "American with Disabilities Act" has been the law
of the land for over twenty-six years.

     2.   In a world of increasing number of low vision and
blind individuals that is expected to double by 2050, it is
essential that low vision and blind individuals are not excluded
from society and segregated in area of web commerce.

3.     This case arises out the fact that Ramada has operated its business in a manner and way that excludes individuals with disabilities who are visually impaired from enjoying and visiting their place of public accommodation, namely Defendant's website https://www.wyndhamhotels.com/ramada.

4.     Ramada owns and operates places of public accommodation, namely hotels with locations throughout the state of Florida, including Broward County.

5.     Defendant offers an adjunct website https://www.wyndhamhotels.com/ramada (the "Website") which is directly connected to its core business, including a site locator to Ramada's locations (places of public accommodation), room availability, amenities, rates, discounts, etc. Thus, the Website has a true nexus to Defendant's core business and operations.

6.     This is an action to put an end to civil rights violations committed by Ramada against individuals with disabilities who are visually impaired and who cannot access and comprehend the internet and the websites that operate therein without the aid of assistive technology.

### JURISDICTION & VENUE

7.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

8.     This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order/reorder Ramada's services/goods online.

9.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Ramada transacts business in Florida, including Broward County, and the acts constituting the violation of the ADA occurred in Broward County, Florida.

10.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

11.  Won Vision is a Florida Not-For-Profit Corporation, located in Miami-Dade, Florida, and it is otherwise sui juris.

12.  Won Vision brings this action on behalf of itself and all other persons similarly situated, i.e., all visually impaired and legally blind persons who require screen-reading software to read website content using their computers. The terms "blind" or "visually impaired" as used in this complaint, refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people meeting this definition have limited vision; others have no vision.

13.  Defendant is a Foreign For Profit Corporation, operating hotels in the entire state of Florida, including Broward County.

14.  At all times material hereto, Defendant's hotels are open to the public.

15.  Defendant is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this Court.

## FACTS

16.  Defendant is defined as a place of "public accommodation" because it is an entity which owns and operates hotels throughout the state of Florida, including but not limited to Broward County.  See 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104. (2).  See also 42 U.S.C. §12181(7)(F). Thus, Defendant's operations are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), §12181(7)(F), and 28 C.F.R. Part 36.

17.  The Website is offered to provide the general public information including but not limited to information on the various locations where the hotel operates, their room availability, amenities, rates, and special offers.

18.   The Website services Ramada's operations and business, allows the general public to transact business on-line, provides information on its products/services, and (among other things) provides general product/service tips and information.

19.   Since the Website allows the general public the ability to locate one of Ramada's locations, the Website is an extension of Ramada's physical locations. Therefore, the Website has a direct nexus between it and Defendant's business/services; hence, the Website is also characterized as a place of public accommodation; 42 U.S.C. §§s 12181(7)(E) and (F).

20.   The Website also allows the general public access to fulfill Ramada's business/services. As such, the Website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(F) and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public. As such, Ramada has subjected itself and the Website to the Americans with Disabilities Act ("ADA").[1]

21.   Plaintiff and all similarly situated individuals are customers or potential customers of Ramada and are interested in Ramada's services/products as offered through the Website.

22.   Plaintiff and all similarly situated individuals frequently utilize the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiff and the class use commercially available screen-reader software to interface with the various websites.

23.   In order to comprehend the Website and to become informed of Ramada's products/services (which other members of the general public may access online), Plaintiff and the class must use screen-reader software.

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

24.   Ramada's products/services being available online and having the ability to access Defendant's locations, room availability, amenities, rates, and special offers online are highly sought after accommodations that help improve the lives of vision impaired people such as Plaintiff and all other similarly situated, and help them integrate and participate in society.

25.   Plaintiff and the class are interested in Ramada's products/services and accessing those products/services through Defendant's Website. Plaintiff learned about Defendant's products/services and Website and decided to look online to learn more, including hotel locations, room availability, amenities, rates, and special offers and find out more about the online products/services through the Website.

26.   In late 2019 and through 2020, Plaintiff attempted on several occasions to utilize the Website to learn about Defendant's products/services. Plaintiff utilizes JAWS Screen-Reader software (hereinafter referenced as "screen-reader software"), which is the most popular screen-reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

27.   However, the Website did not integrate with Plaintiff's screen-reader software, nor was there any function within the Website to permit access for visually impaired through other means.

28.   Plaintiff attempted to locate any Accessibility Notice or any information relating to the website's future accessibility plans or information regarding contacting Ramada to alert it to the inaccessibility of the Website, but was unable to do so, because no such link or notice was provided or it was not accessible via screeenk-reader software.[2]

---

[2] Other online retailers have taken steps to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx

29. Because Plaintiff could not access the Website, it is/ was unable to participate in the online experience at the Website as experienced by the general public, 26 years after the Title III of the ADA was enacted and which promised to remove such barriers.

30. Plaintiff continues to desire to patronize the Website, but is unable to do so as it is unable to comprehend the Website, thus it will continue to suffer irreparable injury from Ramada's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

31. The Website did/does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen-reader software) to comprehend its website in an effective manner.

32. The Website is/was not designed and programmed to interface with commercially available screen-reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

33. The Website is/was so poorly functional for visually impaired individuals who require screen-reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

34. On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

35. On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

36. On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

37. On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

38. On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

39. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

40. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

41. On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

42. On information and belief, Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

43. On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility.[3]

44. On information and belief, Defendant does not have Web Accessibility Policy.

45. Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website https://www.wyndhamhotels.com/ramada.

46. Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services, as well as to its online policies and procedures.

---

[3] Developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C).

47. Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

48. For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society.

49. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website.

50. On information and belief, Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its locations and/or products/services through the Website.

51. On information and belief, Defendant is aware of need to provide full access to all visitors of the Website.[4]

52. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired, like Plaintiff and the class.

53. Such barriers result in punishment and isolation of blind and low vision from the rest of society.

54. Thus, Defendant has refused to make the Website accessible to individuals with disabilities who are visually impaired, like Plaintiff and the class.

55. According to Statistic Brain Research Institute[5], in 2014, online sales in the United States exceeded $304 Billion

_____

[4] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g ( ) (www.retailingtoday.com/article/lawsuit-highlights-importanceada-compliance).

[5] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

U.S. Dollars. On average, 87% of Americans that have browsed online businesses such as the Website and have made an internet purchase, while 57% of Americans that have browsed online businesses have made a purchase multiple times.

56. According to the National Federation for the Blind[6], there are 6,670,300 Americans with visual disabilities.

57. The National Federation for the Blind has also reported that there are 434,600 Americans with visual disabilities living within the state of Florida.

58. Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiff. Defendant is operating in violation of Plaintiff's rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

59. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

60. Plaintiffs and all others similarly situated will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

61. Notice to Ramada is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202. Nevertheless, Plaintiff provided notice to Defendant and attempted to bring the Website's shortcomings to Defendant's attention, to no avail.

62. Plaintiff has retained MG Legal Group, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

---

[6] Statistics for 2012, see http://www.NFB.org/blindness-statistics

.    .

63. Plaintiff and all others similarly situated re-allege and incorporate by reference the allegations set forth in ¶¶s 1-62 above.

64. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities.[7]

65. As a result of the inaccessibility of the Website and by the barriers to access in the Website (when removal of those barriers is readily achievable), Ramada has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that Ramada has made available to the general public on the Website in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

66. Pursuant to 42 U.S.C. §12181(7)(E), the Website is a place of *public accommodation* under the ADA because it serves to augment, inform and educate the public to Ramada's core business, locations, products and services.

67. As such, the Website must be in compliance with the ADA. However, the Website is/was not in compliance with the ADA. Plaintiff and all others similarly situated have/had suffered and will continue to suffer an injury in fact because of the Website and Ramada's noncompliance with the ADA.

68. Types of website programming errors include (but are not limited to) Programming Error Types ("PETs"), which are easily identifiable and correctable, and Programing Alert Error Types ("PATs"), which are prone to making the website inaccessible.

69. A sampling review of just part of the Website revealed that the website is not functional for users who are visually

---

[7] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate - Concerning The Promise of Accessible Technology: Challenges and Opportunities - Presented on February 7, 2012.

impaired. The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

1) The language of the document is not identified,

2) Image alternative text is not present, and

3) A form control does not have a corresponding label.

70. Further, the Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

a) Alternative text is likely insufficient or contains extraneous information,

b) An event handler is present that may not be accessible,

c) A heading level is skipped,

d) Flash content is present,

e) Adjacent links go to the same URL,

f) A link contains no text, and

g) Alternative text is likely insufficient or contains extraneous information.

More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

71. As a result 69-70, blind and low vision individuals visiting https://www.wyndhamhotels.com/ramada experience barriers such as:

a. Inability to successfully navigate to the main content, as the bypass link is not accessible;

b. Inability to maneuver on the home page; as it is not correctly labeled with headings;

c.   Inability to maneuver through the affiliated hotels links; as the visual focus is unavailable;

d.   Inability to successfully navigate through the main page, as the main elements are not properly labeled and structured;

e.   Inability to successfully navigate to the images and links of affiliated hotels; as the images and links do not include descriptive text; and

f.   Inability to provide feedback; as the feedback link is not accessible.

72. Further, the Website did/does not offer include the universal symbol for the disabled[8], which would permit disabled individuals to access the Website's accessibility information and accessibility facts.

73. Therefore, due to Plaintiff's disability and Defendant's failure to have the Website adequately accessible to individuals with visual impairments, Plaintiff was unable to comprehend the Website.

74. Ramada has violated the ADA (and continues to violate the ADA) by denying access to the Website to individuals with disabilities who are visually impaired and who require the assistance of interface with screen-reader software to comprehend and access internet websites. These violations within the Website are ongoing.

75. As a result of Ramada's inadequate development and administration of the Website, Plaintiff and the class are entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

76. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff and the class injunctive relief; including an order to:

a)   Require Ramada to adopt and implement a web accessibility policy to make publicly available and

---

[8]         , or HTML "Accessibility" link for those individuals who are visually impaired.

> directly link from the homepage of the Website to a statement as to Ramada's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and
>
> b)   Require Ramada to cease and desist discriminatory practices and if necessary to cease and desist operations of the Website until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

77. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant.

WHEREFORE, Plaintiff and all other similarly situated hereby demand judgment against Ramada and request the following injunctive and declaratory relief:

> a)   The Court issue a declaratory judgment that Ramada has violated Plaintiff's rights as guaranteed by the ADA;
>
> b)   The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Ramada from operating the Website without adequate accommodation for the visually impaired community;
>
> c)   The Court enter an Order requiring Ramada to update website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;
>
> d)   The Court enter an Order requiring Ramada to clearly display the universal disabled logo[9] within its website, wherein the logo would lead to a page which would state Ramada's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the Website;



9

e)   The Court enter an order requiring Ramada to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f)   The Court enter an Order directing Ramada to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Ramada to undertake and complete corrective procedures to the Website;

g)   The Court enter an Order directing Ramada to establish a policy of web accessibility and accessibility features for the Website;

h)   The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to Plaintiff; and

i)   That the Court award such other and further relief as it deems necessary, just and proper.

Respectfully Submitted,

/s/ Lawrence J. McGuinness
Fla. Bar No. 814611
MG Legal Group
3126 Center Street
Coconut Grove, FL 33133
Tel. (305) 448-957
Fax. (305) 448-9559
ljm@ljmpalaw.com
scheduling_ljmpa@comcast.net

Counsel for Plaintiff

DEC 0 3 2020